# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

KEITH E. DAVIS

      Plaintiff,

v.                                                                 Case Number: 2:21-cv-00588

WVU MEDICINE/CAMDEN CLARK
MEDICAL CENTER, et al.

      Defendants.

## PROPOSED FINDINGS & RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3.) Pending before the Court are two motions to dismiss— one filed by Defendants Westbrook Health Services, Inc. ("Westbrook") and its employee, James Yoder ("Yoder") (together, the "Westbrook Defendants"), and the other filed by Defendant Camden-Clark Memorial Hospital Corporation ("CCMC").[1] (ECF Nos. 13; 17.) Both motions seek dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that this Court lacks original subject-matter jurisdiction over Plaintiff's claims. For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that the motions of the Westbrook Defendants and CCMC (collectively, the "Defendants") be **GRANTED**.

---

[1] According to CCMC, it was inaccurately named in the Complaint; this Defendant identifies itself as "Camden-Clark Memorial Hospital Corporation." (ECF No. 13 at 1.) The undersigned recommends that the presiding District Judge order the case style on the Clerk's docket be updated to reflect this information.

I.  BACKGROUND

This civil action concerns the medical care Plaintiff Keith E. Davis ("Plaintiff") received when he presented to CCMC's emergency department ("ER") the night of November 10, 2019, which ultimately resulted in Plaintiff's involuntary commitment for approximately one week for psychiatric evaluation. (ECF No. 2 at 7.) Plaintiff alleges that, when he presented to CCMC's ER at approximately 10:00 p.m., he complained of "severe rectal pain and bleeding, anxiety, sleep deprivation and suicidal ideations." *Id.* Plaintiff was in a state of distress and experiencing severe pain. *Id.* First, Plaintiff was seen briefly in the ER by Joel Rosenbloom, M.D. ("Dr. Rosenbloom") who ordered lab work and left "to do his rounds." *Id.* As the night dragged on, Plaintiff and his spouse, who had accompanied him, repeatedly informed CCMC staff that Plaintiff was "in a lot of pain," and asked if Dr. Rosenbloom would be returning so that Plaintiff could be prescribed "medicine to help" with his symptoms of pain and insomnia. *Id.*

When Dr. Rosenbloom returned, he performed a rectal examination and reviewed Plaintiff's colonoscopy imaging; he then informed Plaintiff that the lab results had not arrived. *Id.* Plaintiff "asked Dr. Rosenbloom for pain medication," and received a response that Dr. Rosenbloom's "nurse would be in soon." *Id.* Dr. Rosenbloom's nurse did not appear, however; instead, Defendant Frank White ("White"), a nurse at CCMC, transported Plaintiff "a short distance across the ER" to the Behavioral Health Unit ("BHU"). *Id.* After waiting for over an hour in the BHU, Plaintiff's distress increased. *Id.* He experienced a racing heart, pain in his chest, and sweating, and he paced the room "crying for what seemed like forever waiting for relief." *Id.*

Hours later, Defendant Todd Phillips ("Phillips")—who, Plaintiff alleges, is a "Mental Hygiene Commissioner"—entered Plaintiff's room "and proceeded to type on his computer," never speaking to Plaintiff; Phillips then walked to the waiting room and spoke with Plaintiff's spouse. *Id.* at 8. Phillips informed Plaintiff's spouse that the BHU "had no room" for Plaintiff, and that he would therefore be transported to another facility. *Id.* Plaintiff's spouse informed Phillips that Plaintiff had not slept because he was unable to obtain a refill for his Clonazepam from his mental-health provider; Plaintiff had been on the medication "for almost two decades." *Id.* Phillips assured Plaintiff's spouse that he would "ask the doctor for medication for [Plaintiff] [s]o [he] could try to relax." *Id.* Plaintiff's spouse then went home to sleep. *Id.* After his spouse left, Plaintiff left his room in the BHU and walked around, crying and seeking help. *Id.*

At some point between 4:00 a.m. and 5:00 a.m. on November 11, 2019, CCMC staff allegedly called 911; shortly thereafter, two Parkersburg, West Virginia City Police Officers arrived and attempted to guide Plaintiff back to his room in the BHU. *Id.* Plaintiff alleges that his continued plea for "something for the pain" was met with cursing from the police officers, and White threatened Plaintiff that "If you ask for anything, it will be the death of you." *Id.* In response, Plaintiff "immediately screamed" that White had threatened him; however, CCMC staff ignored Plaintiff and merely kept him physically confined to a small space in the BHU. *Id.* After 5:00 a.m., Phillips—along with an unnamed attorney—allegedly met with Defendant Yoder "from Westbrook Health Services."[2] *Id.* "All the

---

[2] During the relevant time period, Yoder was employed as a licensed clinical social worker with Westbrook, a licensed comprehensive behavioral health facility specializing in mental health, addiction, and prevention services. (ECF Nos. 2 at 5; 18 at 2.) Yoder completed the Certificate of Licensed Examiner on November 11, 2019 for a hearing on Plaintiff's involuntary hospitalization. (ECF No. 2 at 5.) Plaintiff alleges that Yoder diagnosed him with bipolar disorder without speaking to him and without knowing Plaintiff's medical history or medical limitations. *See id.*

while," Plaintiff continued "moaning, crying, [and acting] frantic and scared." *Id.*

At approximately 8:00 or 9:00 a.m., Plaintiff was taken out of CCMC's BHU and placed in an unmarked police vehicle with a transport officer; afraid of police, Plaintiff exited the vehicle and attempted to run. *Id.* at 9. Police officers tackled Plaintiff, placing him in handcuffs and injuring him in the process. *Id.* Eventually, Plaintiff was transported to Highland Hospital in Clarksburg, West Virginia, and was held involuntarily for approximately one week for a mental health examination, then released. *Id.* at 10.

Plaintiff takes issue with the healthcare providers' diagnosis of bipolar disorder; additionally, Plaintiff asserts that he was unfairly suspected of drug-seeking behavior. Plaintiff states that he "should have been treated the same as anyone else presenting to an ER," that his "pain and anxiety should have been controlled medicinally," and that he "should have received follow up appointments with the right doctors for [his] situation." Plaintiff concludes that "[f]or over 11 hours I was there I received no medication, no empathy or understanding, nothing. I received neglect and threats." *Id.* As a result of this incident, Plaintiff alleges that he sustained mental, emotional, and physical distress, flashbacks, night terrors, nerve damage and scarring on his hands and wrists; and other injuries that have impacted his quality of life. *Id.*

Subsequently, Plaintiff initiated this civil action on November 3, 2021, naming six Defendants: CCMC, Dr. Rosenbloom, White, Phillips, Westbrook, and Yoder. (ECF No. 2.) While the substance of the Complaint is clouded by issues of clarity, formatting, and form that often accompany *pro se* pleadings, it is undisputed that Plaintiff seeks to allege tort claims for negligence and medical malpractice against the named Defendants pursuant to West Virginia law. (*See* ECF Nos. 2 at 13; 2-14 at 1; 18 at 3; 21 at 2-3; 26 at 2.)

In response to Plaintiff's Complaint, on January 9, 2023, Defendant CCMC moved to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF No. 13.) Plaintiff filed a response in opposition on January 19, 2023, and CCMC filed its reply on January 26, 2023. (ECF Nos. 21; 25.) Without leave of Court, Plaintiff then filed a surreply on February 6, 2023.[3] (ECF No. 26.) CCMC's motion is now ripe for review. Similarly, the Westbrook Defendants filed a motion to dismiss on January 12, 2023, echoing CCMC's Rule 12(b)(1) argument and also seeking dismissal for failure to state a claim pursuant to Rule 12(b)(6). (ECF No. 17.) Plaintiff filed a timely response in opposition on January 19, 2023, and the Westbrook Defendants filed a reply on January 26, 2023. (ECF Nos. 20; 24.) Consequently, the Westbrook Defendants' motion is also ripe for review. As for the remaining Defendants—Dr. Rosenbloom, Phillips, and White—Plaintiff has yet to effect service of process. (*See* ECF Nos. 7; 10; 19; 22.)

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (a "12(b)(1) motion") does not concern the merits of Plaintiff's Complaint; stated another way, this type of motion does not ask the Court to determine whether Plaintiff prevails on his tort claims against the Defendants. Rather, a 12(b)(1) motion challenges the Plaintiff's right to bring his lawsuit *here* in federal District Court, and this Court's original jurisdiction over the subject matter of Plaintiff's claims ("subject-matter jurisdiction"), a phrase that refers to the Court's authority to make legal judgments over the type of lawsuit brought by Plaintiff against the Defendants. *See Michelson v. Coon*,

---

[3] This Court's Local Rules of Civil Procedure state that "[s]urreply memoranda shall not be filed except by leave of court." L.R. 7.1(a)(7). As Plaintiff is proceeding *pro se*, however, the undersigned took Plaintiff's submission into consideration in making the instant recommendation. *Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*) (explaining that a *pro se* litigant's pleadings must be "accorded liberal construction").

20-cv-6480, 2021 WL 2981501, at *2 (4th Cir. July 15, 2021); *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (explaining that the jurisdictional inquiry is foundational and asks whether a court has the "power to hear a case").

The United States has a "dual" system of government, meaning that each of the fifty States have their own State system of government, and the federal system governs nationwide alongside the State systems. As a result of this dual system of government, each of the fifty States has its own court system, while in addition there is a nationwide federal court system—of which this Court is a part. State courts exercise broad subject-matter jurisdiction over many different types of cases—including tort claims like Plaintiff's. In contrast, federal courts are courts of "limited jurisdiction," which means that a federal court can only hear types of claims that are either listed in the Constitution, or are set out by Congress in federal statutory law. *See Bowles v. Russell*, 551 U.S. 205, 212 (2007); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Under the circumstances of this case, only two types of civil actions, or "cases," fall within this Court's limited jurisdiction: (1) actions in which the plaintiff's claim presents a "federal question" pursuant to 28 U.S.C. § 1331; or (2) actions in which there is both "diversity of citizenship" *and* the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332. *Tri-State Prop. Rentals, LLC v. Cabell Cty. Mag. Ct.*, No. 3:23-CV-00072, 2023 WL 2960804, at *6–7 (S.D.W. Va. Mar. 20, 2023), *adopted*, 2023 WL 2957482 (S.D.W. Va. Apr. 14, 2023) (citing 28 U.S.C. §§ 1331, 1332). *See also Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).

This Court must determine whether it has original subject-matter jurisdiction before it may hear a case brought before it. *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 442

n.4 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Additionally, "if the Court determines at any time that it lacks subject matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety").

Consequently, if Plaintiff's claims against the Defendants do not fall within the limited "federal question" or "diversity of citizenship" categories of this Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 or 1332, then Plaintiff may not pursue his claims here in federal court and this civil action must be dismissed without prejudice. *See Womack v. Owens*, 736 Fed. App'x 356, 357 (4th Cir. 2018) ("[A] dismissal for lack of subject matter jurisdiction must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). "There is no presumption that a federal district court has subject matter jurisdiction[.]" *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). The burden of proving "the asserted basis for jurisdiction" under these circumstances is upon the Plaintiff. *Melendez v. Sebelius*, 611 Fed. App'x 762, 763 (4th Cir. 2015) (citations omitted).

### III. DISCUSSION

Dismissal pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure is proper, because the undisputed facts show that this Court lacks original subject-matter jurisdiction under either 28 U.S.C. §§ 1331 or 1332.

### a. Federal Question Jurisdiction

The first type of claim that falls within this Court's limited subject-matter jurisdiction is often called "federal question" jurisdiction, and is set forth in 28 U.S.C. § 1331, which is a federal statute. This statute provides that "[t]he [federal] district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "In determining whether a claim 'arises under' the laws of the United States, courts abide by the 'well-pleaded complaint rule,' assessing whether the plaintiff's cause of action—as stated on the face of the complaint—has some basis in federal law." *Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F.4th 271, 279 (4th Cir. 2022) (quoting *Merrell Dow Pharms Inc. v. Thompson*, 478 U.S. 804, 807-08 (1986)). Further, "the 'vast majority' of cases arising under federal law 'are those in which federal law creates the cause of action.' " *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016) (quoting *Merrell Dow*, 478 U.S. at 808).

In the case at hand, it is clear that Plaintiff's claims against the Defendants do not "arise under" federal law within the scope of 28 U.S.C. § 1331. As both CCMC and the Westbrook Defendants noted in their subject motion memoranda, it is undisputed that Plaintiff seeks to allege tort claims for negligence and medical malpractice against the named Defendants pursuant to West Virginia law. (*See* ECF Nos. 2 at 13; 2-14 at 1; 14 at 3-4; 18 at 3, 5-6; 21 at 2-3; 26 at 2.) Plaintiff's allegations of mistreatment regarding his care and diagnosis by the various Defendants simply do not arise under federal law or necessarily turn on any federal law.

Plaintiff's memoranda in response fleshed out Plaintiff's factual allegations, attached evidence of Plaintiff's treatment and injuries, and otherwise addressed the merit

of his claims only, which is largely irrelevant to the issue at hand. (*See* ECF Nos. 20; 21.) As CCMC pointed out in its reply memorandum, "[n]one of these allegations, even if accepted as true, confer this Court with subject matter jurisdiction[.]" (ECF No. 25 at 2.) Plaintiff's responses did not assert that any of Plaintiff's claims arise under federal law, did not introduce any evidence to establish this Court's jurisdiction, and in fact did not address the jurisdictional issues raised by the Defendants' motions at all. (*See* ECF Nos. 20; 21.) To the contrary, Plaintiff reemphasized the tort-based nature of this civil action, stating that he is "merely seeking justice for [him]self for the lack of medical intervention, neglect, abuse and suffering because of the actions or [omissions] from the Defendants." (ECF No. 21 at 3.)

In his surreply memorandum, Plaintiff made two relevant statements. First, he stated an assumption, without any citation to supporting authority, that "[a]s to subject matter jurisdiction; subject matter falls under tort law concerning malpractice which this Court has in its jurisdiction." (ECF No. 26 at 2.) Again, however, Plaintiff's characterization of his claims as arising from "tort law" cuts *against*, rather than supports, a finding that his claims against the Defendants "aris[e] under the Constitution, laws, or treaties" of the federal government within the scope of 28 U.S.C. § 1331.[4] The second relevant statement in Plaintiff's surreply quotes from § 1331 that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, Laws, or Treaties of the United States," followed by Plaintiff's conclusion, "Hence: Southern District of West Virginia United States District Court." (ECF No. 26 at 2.) While Plaintiff's

---

[4] As the Congressional Research Service explained in a recent, particularly accessible publication meant to assist the general public's understanding, "[w]ith a few significant exceptions, tort law is largely a matter of state law rather than federal law." *Introduction to Tort Law*, CONGRESSIONAL RESEARCH SERVICE (May 26, 2023), https://crsreports.congress.gov/product/pdf/IF/IF11291.

9

statement appears to demonstrate that this Court is the appropriate venue for claims arising under § 1331 in this context, it overlooks the prerequisite that Plaintiff's claims do in fact "aris[e] under" federal law; in other words, the federal courts must have jurisdiction before the issue of *which* specific venue would be appropriate among the federal district courts is relevant. Thus, in response to Defendants' jurisdictional challenges in their subject motions to dismiss, Plaintiff has not met his burden to demonstrate that this Court has original, "federal question" subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff's only citation to federal law is set forth on the Court's form Civil Cover Sheet that Plaintiff submitted with his Complaint, which cites "38 U.S.C. § 7316" as the statute pursuant to which Plaintiff filed his Complaint. (ECF No. 2-14.) However, this statute is inapplicable to the present case. As the U.S. District Court for the Eastern District of Oklahoma recently explained, "[s]ection 7316 allows patients of Veteran Health Administration Hospitals to bring claims against the United States "for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment." *Goldsmith v. United States*, 22-cv-36, 2022 WL 17853196, at *3 (E.D. Okla. Dec. 22, 2022). First, this statute is inapplicable because Plaintiff has not alleged a claim against the United States. Furthermore, Plaintiff has not alleged—nor is there any evidence on the record to demonstrate—that the events giving rise to the Complaint occurred in Veteran Health Administration Hospitals; to the contrary, in detailing his transfer from CCMC in his response memorandum, Plaintiff expressly noted that he was *not* taken to the nearby "VA Hospital." (ECF No. 20 at 14.) Finally, Plaintiff has not alleged—nor is

there any evidence on the record to demonstrate—that any of the allegedly negligent acts or omissions at issue in this lawsuit were carried out by a "health care employee of the [Veterans Health] Administration" within the scope of § 7316.

In summary, there is simply no evidence before this Court to support a finding that "federal law creates the cause of action" in Plaintiff's Complaint. *Pressl*, 842 F.3d at 303. The undersigned therefore **FINDS** that the Court does not have original subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.

### b. Diversity of Citizenship Jurisdiction

The second type of claim that falls within this Court's limited subject-matter jurisdiction is often called "diversity" jurisdiction, and is set forth in 28 U.S.C. § 1332. This statute provides in relevant part that "[t]he [federal] district courts shall have jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1). In other words, the federal district courts have subject-matter jurisdiction over all types of civil actions—even those that do not arise under federal law, such as Plaintiff's tort-based claims in the case at hand—but *only* if the value of the lawsuit exceeds the statutory amount of $75,000, *and* the lawsuit involves citizens of different States. Importantly, the U.S. Supreme Court explained that § 1332 "require[s] complete diversity of citizenship," meaning that "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978). Stated another way, a federal district court does not have original subject-matter "diversity" jurisdiction under § 1332 when one or more of the plaintiffs in the civil action is a citizen of the same state as one or more

of the defendants. *See Navy Fed. Credit Union v. LTD Fin. Servs.*, 972 F.3d 344, 352 (4th Cir. 2020) (explaining that, in order to claim diversity jurisdiction under § 1332, "no plaintiff may share a citizenship with any defendant").

In the case at hand, even assuming—for the purpose of adjudicating Defendants' subject motions only—that Plaintiff can demonstrate that "the matter in controversy" in this civil action "exceeds the sum or value of $75,000," it is clear that Plaintiff is not diverse in citizenship from the Defendants within the scope of 28 U.S.C. § 1332. Plaintiff makes no representations with respect to jurisdiction in his Complaint; however, the Court's form Civil Cover Sheet that Plaintiff submitted with his Complaint represents that the parties are citizens of West Virginia. (ECF No. 2-14.) Indeed, it is undisputed among the parties that Plaintiff is a citizen of West Virginia, and that Defendants Westbrook and CCMC are both West Virginia corporations with their principal places of business in West Virginia as well. (ECF Nos. 2-14; 14 at 3 n.1; 18 at 6; 24 at 2; 25 at 2; 26 at 1-2.)

Importantly, "[t]he burden of persuasion for establishing diversity jurisdiction . . . remains on the party asserting it," and "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010). In response to Defendants' jurisdictional challenges, however, Plaintiff failed to provide *any* evidence—let alone "competent proof"—to support a finding of diversity jurisdiction. (*See* ECF Nos. 20; 21.) Again, Plaintiff's memoranda in response to Defendants' subject motions merely included extensive recitations of largely irrelevant factual allegations; Plaintiff did not assert that the parties are diverse in citizenship, did not introduce any evidence to establish this Court's jurisdiction, and again did not address the jurisdictional issues raised by the Defendants'

subject motions at all. Plaintiff's surreply memorandum does address the amount-in-controversy requirement of § 1332, asserting that the "[r]emedy . . . will be more than the minimum of $75,000[.]" (ECF No. 26 at 2.) However, Plaintiff failed to make any substantive representations of fact or legal argument germane to the issue of the parties' citizenship. (*See, e.g.*, ECF No. 26 at 2.) Plaintiff has thus failed to meet his burden to demonstrate that he is diverse in citizenship from all the named Defendants.

In summary, there is simply no evidence before this Court to support a finding that Plaintiff is diverse in citizenship from each of the named Defendants; to the contrary, it is undisputed that Plaintiff shares West Virginia citizenship with at least two Defendants. The undersigned therefore **FINDS** that the Court does not have subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332. Thus, as Plaintiff's claims against the Defendants do not fall within the limited "federal question" or "diversity of citizenship" categories of this Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 or 1332, then Plaintiff may not pursue his claims here in federal court and this civil action must be dismissed without prejudice in its entirety[5] pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.

Finally, while CCMC and the Westbrook Defendants raised the issue of the sufficiency of Plaintiff's allegations pursuant to Rule 12(b)(6), the Court lacks authority to adjudicate the merits of Defendants' challenges on this basis. *See Steel Co. v. Citizens*

---

[5] *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, (2005) (explaining that, when the state of citizenship of a *single* defendant is the same as the plaintiff's state of citizenship, this fact "deprives the district court of original diversity jurisdiction over the *entire* action") (emphasis added). *See also Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011); *Tri-State Prop. Rentals, LLC v. Cabell Cty. Mag. Ct.*, 3:23-CV-00072, 2023 WL 2960804, at *7 (S.D.W. Va. Mar. 20, 2023), *adopted*, 2023 WL 2957482 (S.D.W. Va. Apr. 14, 2023); Scott Dodson & Philip A. Pucillo, *Joint & Several Jurisdiction*, 65 Duke L.J. 1323, 1333 (2016) (explaining the Supreme Court's consistent treatment of "the complete-diversity rule as an all-or-nothing requirement").

*for a Better Env't*, 523 U.S. 83, 94 (1998) (explaining that, insofar as jurisdiction is the power to declare the law, a federal court cannot proceed at all without jurisdiction).

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss filed by Defendant Camden-Clerk Memorial Hospital Corporation (ECF No. 13), as well as the Motion to Dismiss filed by Defendants Westbrook Health Services, Inc. and James Yoder (ECF No. 17), be **GRANTED**, and that this civil action be **DISMISSED WITHOUT PREJUDICE**[6] for lack of subject-matter jurisdiction.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Johnston.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985);

---

[6] As the Fourth Circuit Court of Appeals explained, the absence of subject matter jurisdiction cannot support a dismissal *with* prejudice, "because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Shing v. MD Dev. Disabilities Admin.*, 698 Fed. App'x 70, 72 (4th Cir. 2017).

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, transmit a copy to counsel of record via the Court's CM/ECF system, and mail a copy of the same to any *pro se* party at his or her address of record.

ENTER: July 7, 2023

Dwane L. Tinsley
United States Magistrate Judge